# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DANNY L. DIXON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL ASTRUE, COMMISSIONER OF ) <br> SOCIAL SECURITY, ) <br> ) <br> Defendant. ) <br> ) | **CIVIL ACTION** <br><br> No. 10-1254-MLB |

## MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties and the court is prepared to rule. (Docs. 12, 19, 20).

## I. General Legal Standards

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a

quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find

non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487. Before going from step three to step four, the agency will assess the claimant's

residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); 404.1520(f, g).

**II.  History of Case**

On February 11, 2009, administrative law judge (ALJ) Michael A. Lehr issued his decision (R. at 10-21). Plaintiff alleged that his disability began January 1, 2005 (R. at 10). At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since his alleged onset date (R. at 12). At step two, the ALJ found that plaintiff had the following severe impairments: major depression and polysubstance abuse (R. at 12). At step three, the ALJ found that plaintiff's impairments do not meet or equal a listed impairment (R. at 13-14). After establishing plaintiff's RFC, the ALJ found at step four that plaintiff cannot perform past relevant work (R. at 19). At step five, the ALJ found that plaintiff would be able to perform other work which exists in significant numbers and therefore concluded that plaintiff was not disabled (R. at 20).

**III.  Analysis**

Plaintiff asserts that the ALJ committed several errors in his decision denying benefits. First, plaintiff contends that the ALJ erred in concluding that plaintiff was not disabled at step 3. At step three, plaintiff has the burden of demonstrating, through medical evidence, that his impairments meet all of the specified medical criteria contained in a particular listing. Riddle v. Halter, No. 00-7043, 2001 WL 282344, *1 (10th Cir. March 22, 2001)(citing Sullivan v. Zebley, 493 U.S. 521, 530 (1990)). An impairment that manifests only some of those criteria, no matter how severely, does not qualify.

Sullivan, 493 U.S. at 530. The ALJ is required to discuss the evidence and explain why he found that plaintiff was not disabled at step three. This court should not engage in the task of weighing evidence in disability cases. The court's function is only to review the Commissioner's decision to determine whether his factual findings are supported by substantial evidence and whether he applied the correct legal standards. In the absence of ALJ findings supported by specific weighing of the evidence, the court cannot assess whether relevant evidence adequately supports the ALJ's conclusion that plaintiff did not meet or equal any listed impairment. Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996).

The ALJ found that plaintiff's impairments did not meet or equal listed impairment 12.04 (depressive syndrome)[1] and 12.09 (substance abuse). More specifically, the ALJ found that plaintiff's impairments do not meet either the "B" criteria or the "C" criteria of 12.04. The "B" criteria of 12.04 are as follows:

> B. Resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2010 at 507-508, 508).

The ALJ, citing to plaintiff's medical records, found that

---

[1] Listed impairment 12.04 is met when both the "A" and the "B" criteria are satisfied, or when the requirements of the "C" criteria are satisfied. 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2010 at 507, emphasis added). The "A" criteria of 12.04 is never discussed by the ALJ in his decision.

-5-

plaintiff had only mild restrictions in activities of daily living, moderate difficulties with social functioning, and moderate difficulties with concentration, persistence, or pace (R. at 13). The ALJ also found that plaintiff had no episodes of decompensation. Therefore, the ALJ concluded that the "B" criteria of 12.04 were not met (R. at 13). The ALJ further concluded that the evidence failed to establish the presence of the "C" criteria (R. at 14).[2]

With respect to the activities of daily living, plaintiff asserts that the ALJ failed to adequately discuss the daily activities report completed by plaintiff's father. The ALJ noted the report but, after finding it consistent with plaintiff's allegations, disregarded the father's report because it was not supported by the treatment notes or the claimant's reports. The ALJ, however, does not cite to any specific page in the record. Thus, the court is unable to meaningfully review the ALJ's reasoning for disregarding plaintiff's father's report. Cagle v. Astrue, No. 07-5107, 2008 WL 506289, *5 (10th Cir. Feb. 25, 2008). Moreover, plaintiff's report and testimony state that he rarely leaves the house or his bed, does not shower, rarely gets dressed and only eats once a day. (R. at 220, 248). Nonetheless, the ALJ found that plaintiff only had mild restrictions because he performed light meals, shopping, housecleaning and laundry. (R. at 13). The pages of the record cited by the ALJ, however, state that plaintiff only eats one time a day and usually prepares frozen meals. The record also reflects that plaintiff needs reminders and encouragement to perform household tasks. The ALJ does not give his

---

[2] Plaintiff does not challenge the ALJ's decision that the "C" criteria were not met.

reasoning for ignoring plaintiff's testimony that he does not perform some activities of daily living but does others only out of necessity (eating once a day) and after encouragement.

In finding that plaintiff had moderate difficulties in social functioning, the ALJ cited to three separate treatment notes in support of his finding that plaintiff has contact with his parents and friends. On June 6, 2007, plaintiff reported that he saw a friend for one hour and on July 25, 2007, plaintiff reported that he had dinner with his parents. The final treatment note on September 18, 2007, (R. at 374) states that the only contact he has with others is his parents. The ALJ does not reference the opinions of Nancy Hamm, LSCSW, or April Lucas, ARNP, in his step 3 discussion. Both Hamm and Lucas reported that plaintiff has marked and extreme limitations in social functioning. The ALJ gives little weight to the opinions of Hamm and Lucas, which he discussed in determining plaintiff's RFC, because their opinions were "not consistent with the claimant's treatment notes."

Hamm and Lucas are not acceptable medical sources. 20 C.F.R.§§ 404.1513(a)(2), 416.913(a)(2). The regulations provide that the Commissioner may use evidence from "other medical sources" such as nurse-practitioners, physician's assistants, naturopaths, chiropractors, audiologists, and therapists, none of which are on the list of "acceptable medical sources," to show the severity of plaintiff's impairments and how they affect his ability to work. 20 C.F.R. §§ 404.1513(d), 416.913(d). Recognizing the reality that an increasing number of claimants have their medical care provided by health care providers who are not "acceptable medical sources" - nurse

-7-

practitioners, physician's assistants, social workers, and therapists - the Commissioner promulgated SSR 06-3p. West's Soc. Sec. Reporting Serv., Rulings 327-34 (Supp. 2008). In that ruling, the Commissioner noted:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

Id., Rulings, 330-31.

In this case, there were no treating source opinions from an acceptable medical source. SSR 06-3p explains that where a treating source opinion is not given controlling weight, opinions of nurse-practitioners will be evaluated using the regulatory factors for evaluating medical opinions. Id. at 331-32 (citing 20 C.F.R. §§ 404.1527, 416.927). The ruling explains that the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." Id. at 333; see also, Frantz v. Astrue, 509 F.3d 1299, 1302 (10th Cir. 2007)(remanding for consideration of a nurse-practitioner's opinions in light of SSR 06-3p).

Both Hamm's and Lucas's opinions would support a finding that plaintiff had marked difficulties in social functioning. In giving

their opinions little weight, the ALJ stated that there were differences noted in plaintiff's limitations across the opinions. First, the ALJ noted that the opinions are not supported because plaintiff's symptoms were categorized as moderate during his intake assessment. (R. at 18). The word moderate appears at the end of plaintiff's intake assessment. The record notes that plaintiff's GAF[3] score was 54, which indicated moderate symptoms. The ALJ, however, does not mention that the record is replete with instances in which plaintiff's GAF score was 50 or lower, which is an indication of serious symptoms, such as an inability to keep a job or serious impairment in social functioning. (R. at 341, 380, 467, 502). One of those scores was issued by Dr. Ralph Bharati, who the ALJ cited with approval regarding plaintiff's drug use but did not note the GAF score issued by Dr. Bharati.

The ALJ must discuss uncontroverted medical evidence that he chose not to rely on, as well as significantly probative evidence that was rejected. Grogan v. Barnhart, 399 F.3d 1257, 1266 (10th Cir. 2000). The ALJ failed to do so. The record has several seemingly uncontroverted GAF scores which would support a finding of serious issues with social functioning. The ALJ, however, only referred to plaintiff's initial GAF assessment throughout his report. (R. at 15,

---

[3] The GAF is a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 32. A GAF score of 51-60 indicates "moderate symptoms," such as a flat affect, or "moderate difficulty in social or occupational functioning." Id. at 34. A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. Id.

18). The later GAF scores, which show a serious impairment, would appear to support Hamm's and Lucas's reports that plaintiff has marked impairments in social functioning.

The ALJ further notes that the opinions of Hamm and Lucas are inconsistent because they opined that plaintiff had limitations to "perform activities within a schedule, maintain regular attendance, and be punctual" and the record reflects that plaintiff was consistent in his appointments and usually on time. (R. at 18). However, there is no evidence in the record which would support a finding that plaintiff can perform activities within a schedule. Because of the compound question being answered by Hamm and Lucas, it is difficult to conclusively state that their opinions were inconsistent with the record. In any event, contrary to the position of the commissioner (Doc. 19 at 13), the court does not believe that a single inconsistency in the opinions would support the ALJ's decision to give little weight to <u>all</u> of the opinions issued by Hamm and Lucas in light of the fact that they were plaintiff's only treatment providers and saw plaintiff on a weekly basis for an extended period of time.[4] See 20 C.F.R. § 416.927(d)(1)-(6)(The regulations required the ALJ to

---

[4] After a review of the record, Hamm and Lucas clearly believed that plaintiff had significant mental issues which affected his social functioning in that he consistently had problems with paranoia and violent fantasies. (R. at 324, 335, 339,364, 432, 466, 498). The ALJ, however, did not discuss plaintiff's violent thoughts and tendencies in the opinion. Importantly, Lucas noted this concern in her opinion in which she stated that plaintiff had severe and marked limitations with respect to social interaction due to his paranoia. (R. at 364). The medical records would appear to support a finding of marked or severe limitations with respect to social interaction but the ALJ does not explain why he did not consider this evidence. Moreover, with respect to plaintiff's RFC, the ALJ does not adequately explain how plaintiff could work with others in light of his violent thoughts. This medical evidence must be considered on remand.

consider several specific factors in weighing a medical opinion.)

The ALJ also stated that the opinions were not credible because the ALJ would expect a person with those limitations to require frequent mental health services and hospitalization. The record, however, reflects that plaintiff received services at Comcare twice a week. Also, plaintiff consistently refused more intensive services and hospitalization. (R. at 380, 387, 394, 402).

The ALJ's repeated references to other inconsistencies is not helpful because he failed to cite to the record and explain the inconsistencies. Thus, the court is unable to meaningfully review the ALJ's reasoning for disregarding the majority of Lucas's and Hamm's reports. Cagle v. Astrue, No. 07-5107, 2008 WL 506289, *5 (10th Cir. Feb. 25, 2008)(reversed because the ALJ did not explain and note the inconsistencies in the record); Langley v. Barnhart, 373 F.3d 1116, 1122-23 (10th Cir. 2004)("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not "sufficiently specific" to enable this court to meaningfully review his findings.")

With respect to the ALJ's finding that plaintiff is only moderately limited in concentration, persistence or pace, the ALJ only cited a single occasion in which plaintiff's attention and concentration were intact. (R. at 13). As cited by plaintiff, however, the record lists numerous occasions in which plaintiff's concentration and attention were poor. (Doc. 12 at 14). Moreover, both Hamm and Lucas have opined that plaintiff has both severe and marked limitations with respect to concentration, persistence and

-11-

pace. As stated above, the ALJ did not thoroughly evaluate these opinions and give sufficient support for disregarding them.

Defendant asserts that the ALJ's opinion nevertheless must be upheld because substantial evidence exists to support the opinion. However, when the ALJ has failed to weigh relevant medical evidence, the court cannot assess whether relevant evidence adequately supports the ALJ's findings. Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996). The ALJ must discuss uncontroverted medical evidence that he chose not to rely on, as well as significantly probative evidence that was rejected. Grogan v. Barnhart, 399 F.3d 1257, 1266 (10th Cir. 2000). The ALJ failed to do so.

On remand, the ALJ is instructed to clearly set forth the medical records which are inconsistent with Lucas and Hamm's reports and do a proper weight analysis as required by 20 C.F.R. § 416.927(d)(1)-(6) in light of the fact that there is no treating source opinion. Moreover, the ALJ is instructed to discuss the GAF scores received by plaintiff during his treatment.

**IV. Remaining Allegations of Error**

Plaintiff also claims the ALJ erred in his credibility determination and in assessing plaintiff's RFC. However, the court's review of the credibility evaluation is deferential to the ALJ as the trier-of-fact, and both the credibility determination and the RFC assessment will likely change after a proper step three evaluation and a proper evaluation of the opinions of the medical sources. Therefore, it would be premature at this time to attempt to guide the credibility determination and the RFC assessment on remand. Plaintiff may make his arguments in this regard to the Commissioner on remand.

**V. Conclusion**

For these reasons, the court finds that this action should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this __6th__ day of April 2011, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE